Thomas O. **BANKS**

v.

**BOWEN'S LANDING CORP., et al.**

No. 85–408–Appeal.

Supreme Court of Rhode Island.

March 27, 1987.

---

Kathleen Managhan, Corcoran, Peckham & Hayes, Newport, for plaintiff.

William A. Curran, Seth Bowerman, Hanson, Curran & Parks, Providence, Jeremiah C. Lynch, Jr., Stephen A. Haire, Moore, Virgadamo & Lynch, Ltd., Thomas W. Kelly, C. Russell Bengtson, Carroll Kelly & Murphy, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The plaintiff, Thomas O. Banks (Banks), appeals from a partial summary judgment granted by two Superior Court trial justices to three of the defendants—Bowen's Landing Corporation (BLC), Ronald R. Fatulli (Fatulli), and Bowen's Wharf Company (BWC).[1] The trial justices held that the defendants cannot be held liable for negligence for allegedly failing to post warning signs, erect barriers, or take other actions necessary to prevent patrons of a Newport establishment called The Landing, situated on Bowen's Wharf, from falling or diving into a body of water known as Newport Harbor.

On March 1, 1984, Banks commenced suit against BLC, a Rhode Island corporation, and David Kilroy and Lloyd B. Clark as officers and stockholders of the same. Banks subsequently was granted leave to amend his complaint to include Fatulli, d/b/a Aquidneck Lobster Co., and BWC. BLC leased the premises from Fatulli for the operation of a restaurant with an outdoor liquor-serving area known as The Landing. Abutting Fatulli's property to the north is property in the form of a float and ramp owned by BWC.

According to his complaint, on July 12, 1983 Banks visited The Landing, located on Bowen's Wharf along Newport Harbor. At the time Banks was a minor, but he claims nevertheless to have been served a number of alcoholic beverages by employ-

---

1. Bowen's Landing Corp. and Bowen's Wharf Co. are in no way affiliated.

ees at The Landing and claims further that he left The Landing in an intoxicated condition. Thereafter, Banks allegedly moved to the edge of the property occupied by The Landing, stepped upon a railing situated on a ramp owned by BWC, and dove from the railing into Newport Harbor. The ramp apparently provides access to the float. The water was shallow at the time of Banks's dive, and Banks made contact with the harbor floor. Banks sustained a broken back, resulting in permanent paraplegia.

The complaint filed by Banks alleged three counts: the negligence count already discussed herein, a negligence count for serving alcohol to a minor, and a dram shop count under G.L.1956 (1976 Reenactment) § 3–11–1.[2] On June 3, 1985, partial summary judgment was granted to BLC on the count of negligent failure to warn. The trial justice found "absolutely no foreseeability" and further ruled that there was "no question" that there was no duty of care owed to plaintiff by BLC to place any warnings in the area of the bar. On June 26, 1985, partial summary judgment was granted to Fatulli on the count of negligent failure to warn, the trial justice ruling again that there was "no foreseeability," and no duty of care to warn plaintiff in this particular situation. On July 3, 1985, orders certifying that final judgment could enter on behalf of BLC and Fatulli were entered in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure.

One year later, another trial justice granted summary judgment to BWC on the same negligence count. The trial justice stated that the issue was "whether or not it was foreseeable that a person on the defendant's property would dive into the harbor." The justice concluded that "in the absence of special conditions of peculiar risk the owner of a wharf does not owe a stranger a duty to exercise due care to post a sign warning the stranger of the danger of diving off his wharf or a duty to erect a barrier to prevent such a stranger from voluntarily diving off his wharf." Banks now appeals all three orders granting summary judgment.[3]

When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue as to any material fact which must be resolved. *Rhode Island Hospital Trust National Bank v. Boiteau*, 119 R.I. 64, 376 A.2d 323 (1977); *O'Connor v. McKanna*, 116 R.I. 627, 359 A.2d 350 (1976). If an examination of the pleadings, affidavits, admissions, answers to interrogatories, and other similar matters, viewed in the light most favorable to the opposing party, reveals no such issue, then the suit is ripe for summary judgment. *Rhode Island Hospital Trust National Bank*, 119 R.I. at 66, 376 A.2d at 324; *Harold W. Merrill Post. No. 16 American Legion v. Heirs-at-Law Next of Kin and Devisees of Smith*, 116 R.I. 646, 360 A.2d 110 (1976). In reviewing the grant of a motion for summary judgment, this court applies the same rules as the trial court. *Barratt v. Burlingham*, 492 A.2d 1219, 1220 (R.I. 1985). Only when our review reveals no issues of material fact, and the moving party is entitled to judgment as a matter of law, will we uphold the trial justice's order granting summary judgment. *Id.* We turn now to the record to determine if partial summary judgment was proper in this case.

Negligence is the breach of a duty, the existence of which is a question of law. *Barratt*, 492 A.2d at 1222. Whether there exists a duty of care running from the defendant to the plaintiff is, therefore, a question for the court and not for the jury.[4]

---

**2.** General Laws 1956 (1976 Reenactment) § 3–11–1 was repealed by P.L.1986, ch. 537, § 1. Section 2 of P.L.1986, ch. 537, provides, however, that the repeal of § 3–11–1 shall apply only to causes of action arising on or after June 25, 1986. Therefore, the repeal does not prohibit such an action from being maintained here.

**3.** By Order of this court, December 11, 1986, plaintiff's motion to consolidate his three appeals from the separate Superior Court orders was granted.

**4.** This is the general rule. *Ballard v. Uribe*, 41 Cal.3d 564, 715 P.2d 624, 224 Cal.Rptr. 664 (1986); *Nolan v. New York, New Haven & Hartford Railroad Co.*, 53 Conn. 461, 4 A. 106 (1885)

*D'Ambra v. United States*, 114 R.I. 643, 649, 338 A.2d 524, 527 (1975); *see also Modern Tort Law* § 3.03 (1982). If no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted. *Barratt*, 492 A.2d at 1222.

No clear-cut rule exists to determine whether a duty is in fact present in a particular case; however, courts such as the California Supreme Court have articulated several factors that may be applied to aid in that determination. In considering whether a duty exists, among the factors considered are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach. *See Thompson v. County of Alameda*, 27 Cal.3d 741, 750, 614 P.2d 728, 732–33, 167 Cal.Rptr. 70, 74–75 (1980). An application of a number of these aforementioned principles leads to the inexorable conclusion that the trial justices were not in error when they found that defendants had no duty of care to Banks in this case.

*Foreseeability of harm to plaintiff.* We cannot conclude that the trial justices erred in finding that defendants owed Banks no duty to warn him against or otherwise prevent him from taking a dive off the ramp into Newport Harbor because such an incident was totally unforeseeable. There is nothing in the record that would indicate that Banks's diving from the ramp's rail into the harbor while intoxicated is an ac-

tion that defendants should ever have foreseen.[5]

*The closeness of the connection between defendant's conduct and the injury suffered.* The second trial justice, in dismissing the negligence count against BWC, concluded that the connection between the condition created by defendant's conduct and the injury suffered can "scarcely be labeled 'close.' " Several factors, such as Banks's state of intoxication, Banks's climbing over or onto a railing owned by BWC, and Banks's voluntary diving into the harbor, intervened and bore a significant connection between the condition created by defendant's conduct and the injury suffered. Again, we are not prepared to conclude that the trial justice was incorrect in so holding.

*Policy of prevention of future harm.* We concur with the finding of the second trial justice that requiring citizens to place warnings against and barriers preventing persons from diving into shallow water would provide little disincentive to individuals in the position that Banks found himself on the day he sustained his injuries. As a practical matter, the danger of diving into shallow water is one of common knowledge, and one Banks admits he was aware of. Nevertheless, Banks dove into the water having not first investigated the depth of the harbor at the place where he intended to dive. We fail to see how a warning would prevent such action.

*The extent of the burden to defendants and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.* We find it difficult to envision the complete extent of the burden we would impose upon waterfront-property owners were we to conclude that they owe a duty to warn against and

(the law determines the duty; the evidence shows whether the duty was performed); *Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364 (La.1984); *Larson v. Larson,* 373 N.W.2d 287 (Minn.1985); *Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29, 407 N.Y.S.2d 874 (1978), *aff'd,* 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979) (the question of the existence of a duty in any particular set of circumstances is entirely one of law to be determined by the courts); *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840 (N.D.1986);

*Erickson v. Lavielle,* 368 N.W.2d 624 (S.D.1985); *Pedroza v. Bryant,* 101 Wash.2d 226, 677 P.2d 166 (1984).

5. In *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 298, 333 A.2d 127, 129 (1975), for example, the defendant/landlord was aware of water-filled leaching fields and the presence of young children who came onto the property to play, but failed to take any precautions.

prevent people's diving off their property into shallow waters. Such a duty, if imposed, might require the construction of unsightly and burdensome barriers along the shore and restrict access to beaches, docks, and other recreational spots along the water. We agree with the second trial justice, who eloquently concluded that "[b]arricades might well seriously diminish the utility of [our state's] docks, wharfs and floats which are designed to permit and enhance rather than retard passage between land and water."

Banks maintains that defendants owed him a duty of care under our holding in *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975). In *Mariorenzi* we gave "a final but fitting interment to the common-law categories of invitee, licensee, and trespasser as well as their extensions, exceptions, and extrapolations." *Id.* at 307, 333 A.2d at 133. Our ruling made clear that "the common-law status of an entrant onto the land of another will no longer be determinative of the degree of care owed by the owner, but rather the question to be resolved will be whether the owner has used reasonable care for the safety of all persons reasonably expected to be upon his premises." *Id.* Banks maintains that the trial justice erred in granting the defendants' motions for partial summary judgment because the question of who would be included among "persons reasonably expected to be upon [defendants'] premises" is a factual question for jury determination. This argument reflects a misunderstanding of our holding in *Mariorenzi*, as well as a lack of recognition of the role of the trial justice in any tort action to determine the existence of a duty. The import of our ruling in *Mariorenzi* was our abrogation of the well-worn common-law categories of invitee, licensee, and trespasser. Nothing in our opinion in *Mariorenzi* can be read to absolve the trial justice of the power to determine whether a duty runs from the defendant to the plaintiff in any given case.

The California Supreme Court again has clearly dispelled the confusion that apparently "has arisen over the respective roles played by the court and the jury in determining [tort] liability * * *." *Ballard v. Uribe*, 41 Cal.3d 564, 573 n. 6, 715 P.2d 624, 628 n. 6, 224 Cal.Rptr. 664, 669 n. 6 (1986). We believe that a lengthy quotation from *Ballard* is instructive.

"The confusion may stem, at least in part, from the fact that the 'foreseeability' concept plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.'

"The question of 'duty' is decided by the court, not the jury. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 493, p. 2756 and cases cited; Prosser & Keeton on Torts (5th ed. 1984) p. 236.) As this court has explained, 'duty' is not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734, 69 Cal.Rptr. 72, 441 P.2d 912 [quoting Prosser, Law of Torts, (3d ed. 1964) pp. 332–333].) In California, the general rule is that all persons have a duty ' "to use ordinary care to prevent others being injured as the result of their conduct * * *." ' (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112, 70 Cal.Rptr. 97, 443 P.2d 561 (citations omitted); Civ.Code, § 1714.) *Rowland* enumerates a number of considerations, however, that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: * * *. [*See Thompson v. County of Alameda*, 27 Cal.3d 741, 614 P.2d 728, 167 Cal.Rptr. 70 (1980).] The foreseeability of a particular kind of harm plays a very significant role in this calculus (see *Dillon v. Legg, supra*, 68 Cal.2d 728, 739, 69 Cal.Rptr. 72, 441 P.2d 912), but a court's task—in determining 'duty' —is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negli-

gent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Ballard*, 41 Cal.3d at 573, n. 6, 715 P.2d at 628 n. 6, 224 Cal.Rptr. at 669 n. 6.

No discussion of risk and duty would be complete without acknowledging *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Writing for the majority, Chief Justice Cardozo of the New York Court of Appeals put it succinctly when he wrote that "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension * * *." *Id.* at 344, 162 N.E. at 100. This court cited this language approvingly nearly twenty-five years ago in *Radigan v. W.J. Halloran Co.*, 97 R.I. 122, 196 A.2d 160 (1963), where a bridge contractor, engaged in crane operation near a construction site, caused a current of electricity to run from a nearby high-tension power line underground along an unused electrical conduit, where it burned a hole in a gas main, resulting in a gas leak that penetrated a nearby fire station and exploded, killing the plaintiff's decedent. The plaintiff appealed a ruling of the trial justice sustaining the defendant's demurrer to a complaint of negligence. *Id.* In *Radigan*, this court sustained the demurrer, finding that "nothing [was] alleged that would lead the operator of the crane to foresee that the electricity escaping from the power line would follow the course it did and [that it] would enter the fire station, commingle with escaping gas * * * and cause an explosion." *Id.* at 127, 196 A.2d at 163. "In other words," the court concluded, "the allegations of the declaration [did] not reasonably apprise [the contractor] of any duty which it owed to the decedent." *Id.* Similarly, the allegations of the plaintiff in this case do not apprise the defendants of any duty that they owed him.

The plaintiff's appeal is denied and dismissed, and the judgments appealed from are affirmed.