[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the Court are Wakefield Fitness Center's, Beverly Rucker's, and Healthtrax International's motions for summary judgment.
The undisputed facts are as follows. Plaintiff Keith Brown ("Brown") is seeking compensatory damages that allegedly resulted from an aneurysm he suffered on February 12, 1987. On February 11, 1987 Brown visited an exercise facility operated by defendant Wakefield Fitness Center, Inc. (Wakefield Fitness"), and utilized the facility to perform a complimentary, introductory physical workout. Brown alleges that Wakefield Fitness and its employee, defendant Rucker, were negligent in failing to accurately screen and evaluate Brown prior to his workout. Plaintiff alleges that had such a screening been done, Brown would not have utilized the facility to the degree he did, and consequently would not have sustained the aneurysm.
Defendant Healthtrax International, Inc. ("Healthtrax"), is alleged to have designed the complimentary visit application questionnaire employed by Rucker when she interviewed Brown prior to his workout. It is alleged that Healthtrax negligently designed said questionnaire in that it failed to alert Rucker to the fact that Brown had several major risk factors that should have precluded a workout such as Brown's. It is further alleged that Healthtrax negligently provided training to various employees of Wakefield Fitness.
On May 16, 1989 plaintiffs filed the instant action as their second amended complaint. In addition to the foregoing charges, Karen Brown, Brian Brown, Michael Norman Bessette, Aimee Regina Ann Bessette, Kyle Clearwater Brown, Arielle Awepu Brown, and Adam Sekwan Brown have each sued the defendants for loss of consortium, society, and companionship.
The defendants now move this Court to grant summary judgment. Defendants Wakefield Fitness and Rucker first aver that they should prevail on a motion for summary judgment because the duty owed to Mr. Brown did not rise to the level necessary to support a negligence finding. Wakefield Fitness, Healthtrax, and Rucker next contend that plaintiff Brown assumed the risk of the injury alleged, and thus is precluded from recovery in this matter. Third, all of the defendants argue that the waiver signed by Brown constitutes a complete bar to any prospective recovery by Brown. Defendant Healthtrax also claims as a basis for summary judgment that plaintiff Brown has failed to state a claim upon which relief can be granted. Defendant Rucker alleges that because at all times material hereto she was acting within the scope of her employment, she bears no personal liability to the plaintiff. Finally, all of the defendants assert that because all claims other than those by Keith Brown are derivative, they can not succeed because Keith Brown's underlying claims fail.
Summary judgment is a means of curtailing litigation in the early stages where the court finds that no genuine issue of material fact exists. Trend Precious Metals v. Sammartino,577 A.2d 986 (R.I. 1990). This Court recognizes that summary judgment is a drastic remedy and must therefore be cautiously applied.Rustigian v. Celona, 478 A.2d 187 (R.I. 1984). In determining whether to grant summary judgment, the court reviews all pleadings, affidavits, admissions, and other appropriate evidence in the light most favorable to the non-moving parties, and then determines if the moving party is entitled to judgment as a matter of law. Benner v. J.H. Lynch Sons, Inc., ___ A.2d ___ (1994). After such review, if any genuine issue of material fact exists, the case is inappropriate for summary judgment. AetnaCasualty Surety Co. v. Vierra, 619 A.2d 436 (R.I. 1993). However, if no genuine issue of material fact exists, the judgment should be entered as a matter of law. Id.
The defendants correctly note that whether a duty of care is owed to a plaintiff is a question of law for the court to decideBarrette v. Burlingham, 492 A.2d 1219 (R.I. 19885). Relevant to this decision is the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, closeness of connection between defendant's conduct and injury suffered, the policy of preventing future harm, and the extent of burden to defendant and consequences to community for imposing a duty to exercise care with resulting liability for breach. Banks v.Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987). "A court's task — in determining duty — is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." Bowen's Landing at 1226, citing Ballard v. Uribe,715 P.2d 624, 628 (C.A. 1986). Put more succinctly, "The risk reasonably to be perceived defines the duty to be obeyed."Palsgraf v. Long Island R.R. Co., 162 N.E. 99 (1928).
While the existence of a duty upon the defendant is a matter of law, the imposition of that duty is the product of a fact-intensive approach. See Kenney Mfg. Co. v. Starkweather Shepley Inc., et al No. 93-64-A, decided June 15, 1994. The result hinges on the court's evaluation of, inter alia, the forementioned factors weighing on the existence or non-existence of a duty running to a plaintiff alleging a particular order of negligence. When finding preliminary facts necessary in deciding such questions of law, the court exercises its independent judgment. Rodrigues v. The Miriam Hospital, 623 A.2d 456 (R.I. 1993).
In the current case, there is specific, competent evidence establishing a foundation for the plaintiffs' proposition that Brown was owed a particular duty of care. Included in that evidence is the revelation made via the complimentary visit application that Brown had undergone open-heart surgery and was then taking a blood thinning medication. Further, whether defendant Rucker was informed that Brown was suffering from Marfan's syndrome is a contested fact. Next, plaintiffs cite the American College of Sports Medicine's Evaluation of HealthStatus Prior to Testing as evidence that a person with a history of heart trouble or known cardiovascular, pulmonary, or metabolic disease should have an exercise test or stress test prior to any vigorous exercise. Importantly, Mark Connolly, an owner of Wakefield Fitness, and the former Rhode Island representative for the A.C.S.M., testified that a person in defendant Rucker's position should have the training and experience to be able to recognize significant potential health problems from the health history provided by a potential client. Connolly, p. 33, 34. Finally, plaintiff has submitted a report by Dr. Charles A. Boucher of the Harvard Medical School, Massachusetts General Hospital. Dr. Boucher believes it "reasonable to presume that had Mr. Brown not undergone the strenuous workout on February 11, 1987 that he most probably would not have suffered the aortic dissection" of February 12, 1987. Dr. Boucher views it inappropriate to allow someone like plaintiff Brown to, "perform any strenuous exercise."
After applying the preliminary facts of this case to the standards set forth in Bowen's Landing, supra, the Court declines to accept the defendants' argument that the injuries alleged were beyond the scope of foreseeability, and that no duty was owed by the defendants. See Jamison v. Labrosse,627 A.2d 852 (R.I. 1993).
The next defense cited by the defendants is that of assumption of risk. The defendants readily admit that the standard is subjective to the plaintiff. This being the case, the inquiry becomes fact intensive. Despite this, the defendant's have failed to present evidence that Brown was aware of any risks outside those attendant to all types of physical activity. The defendants have not put forth evidence demonstrating Brown understood the particular risks posed by the type of activity undertaken at Wakefield Fitness on February 11, 1987. Because the defendants have failed to establish the absence of a material issue, Brown need not submit a counter affidavit on this aspect of the motion. Nicholas v. John Hancock Mut. Life Ins. Co.,471 A.2d 945 (R.I. 1984). Therefore, because there is a genuine issue of material fact as to what risks were understood and assumed by Brown, summary judgment is not now appropriate. Steinberg v.State, 427 A.2d 338 (R.I. 1981).
The next issue raised by the defendants is the effect of a release signed by Brown. On several occasions our Supreme Court has visited the subject of exculpatory releases. While not specifically ruling on the use of such releases for fitness centers, various circumstances and fact patterns have been the setting for the Court's pronouncements concerning these releases. See R.I. Hosp. Tr. Nat. Bank v. Dudley Service, 605 A.2d 1325
(R.I. 1992), DiLonardo v. Gilbane Building Co., 334 A.2d 422
(R.I. 1975). A common thread running through these holdings is that the clauses illustrate the contractually expressed intent of the parties and are to be strictly construed against the party seeking to be exonerated. Gilbane at 423.
After reviewing the release at issue, the Court finds that said release does not operate to waive Brown's rights against the defendants for their alleged negligence. Rather, the release simply speaks to consequences of Brown's potential disregard for the Center's rules. The defendants have presented no evidence that would lead this court to rule as a matter of law that the release necessitates summary judgment for the defendants. Similarly, the Court is unpersuaded that the warranty aspect of the release, as strenuously contested at oral argument, is a justification for granting summary judgment.
Defendant Healthtrax next proposes that summary judgment is appropriate because Brown has failed to state a claim upon which relief can be granted. Healthtrax's reasoning is premised on Brown's alternative pleadings. That is, Brown has complained that the questionnaire used by Rucker was negligently designed. In contrast, Brown has also alleged that he gave Rucker sufficient information for her to realize that Brown's medical condition precluded him from engaging in strenuous physical activity. See also Brown depo, II, p. 83. Healthtrax's analysis of both the effect of Brown's inconsistent claims, and their current posture is erroneous.
First, it is axiomatic that a plaintiff may plead inconsistent claims and theories of liability. Super. R. Civ. P. 8(a)(2), (f). Because the pleadings themselves are not barred, the allegations that the questionnaire was negligently designed must be evaluated according to the summary judgment standard. When the appropriate test is applied, it is evident that summary judgment is not now warranted.
The issue that exists is whether the complimentary visit application form, admittedly designed by Healthtrax, is deficient in design and if that deficiency contributed to Rucker's failure to either elicit, understand, or act upon Brown's medical history. Defendant Healthtrax has submitted nothing concerning the applications design that would permit this Court to conclude as a matter of law that Brown is not entitled to relief.
Healthtrax next submits that because it did not train Rucker, it can not be held liable for any negligent training rendered to Wakefield Fitness employees.
Through its answer, Healthtrax admitted providing training to employees of Wakefield Fitness. Included in those employees who were allegedly trained by Healthtrax are Mark and Ann Connolly. See Wakefield Fitness's Answers to Interrogatories, 7, 8. According to Rucker it was Ann Connolly who trained her in, among other things, determining a prospective customer's medical restrictions. Rucker Depo., p. 11.
After reviewing all the pleadings, affidavits, and discovery responses, and resolving all doubts in the plaintiff's favor, this Court can not as a matter of law declare there to be no genuine issue of fact in dispute. Rather, whether or not training provided by Healthtrax satisfied the applicable standard of care and, if not, caused Brown's injuries is an issue to be resolved by a jury. This being the case, Healthtrax's motion for summary judgment must be denied.
The final aspect of the various motions for summary judgment against Keith Brown is defendant Rucker's argument that as an agent for a disclosed principal, she has no personal liability.
It was Rucker's job as a fitness technician and membership representative to interview prospective customers and compile the data for the complimentary visit applications. Connolly Depo.,
p. 32. Knowledge acquired by Rucker of a prospective customer's health history may be imputed to Wakefield Fitness. Further, defendant Rucker would be individually liable if a jury determines that her negligence is the legal and proximate cause of Brown's injuries. Resolving all doubts regarding the merits of the plaintiff's claim in Brown's favor, defendant's motion for summary judgment must be denied. Smith v. Raparot,101 R.I. 565, 225 A.2d 666 (1967).
Because Keith Brown's claims remain viable, all of the derivative claims of Brown's wife, children, and step children likewise withstand defendant's motions for summary judgment.
The defendant's motions for summary judgment are hereby denied in full. Counsel shall prepare an appropriate order for entry.