**Jesus SALMERON**

v.

**Felix NAVA.**

**No. 95–504–Appeal.**

Supreme Court of Rhode Island.

June 6, 1997.

Robert D. Watt, Providence, for Plaintiff.

Kevin J. Holley, Providence, for Defendant.

Present: LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case came before a hearing panel of this Court for oral argument on November 19, 1996, pursuant to an order that directed both parties to appear and show cause why the issues raised by the plaintiff's appeal from the entry of summary judgment in favor of the defendant in the Superior Court should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

The relationship between defendant, Felix Nava (Nava), and plaintiff, Jesus Salmeron (Salmeron), was not a typical friendship based on common activities and mutual interests. Nava was instrumental in Salmeron's coming to the United States from Mexico. Nava sent money to Salmeron to provide for his transportation and entry costs into this country. He allowed Salmeron to live with him and his wife on the first floor of Nava's three-story tenement house in Providence. Nava secured employment for Salmeron in the same place where he himself worked. In fact, Nava was Salmeron's supervisor at work. Additionally, when Salmeron expressed an interest in renting the second-floor apartment in Nava's house, Nava agreed. However, Nava told Salmeron that the apartment was in need of repairs and that because of his lack of funds, he planned on making the repairs only one room at a time, primarily on weekends, with the help of his family and friends. Salmeron agreed to rent the apartment, notwithstanding its need for repairs. Salmeron paid Nava rent in the amount of $175 per month.

From time to time, Salmeron would volunteer to assist Nava in the renovation and repair work of his apartment. According to Nava's affidavit, although he never requested Salmeron's help, Salmeron voluntarily offered to do so. Salmeron was never paid for his work.

On the morning of the day on which the injury in question occurred, Nava's son asked Salmeron if he was going to help Nava's father do repair and renovation work that day. Salmeron said he was, and did. Sometime during the course of the work, Nava's father asked Salmeron to cut a piece of wood on a table saw that Nava had borrowed from his brother. The table saw, which Nava had earlier placed in the apartment Salmeron was renting, did not have a protective blade cover. While Salmeron was cutting the piece of wood as requested by Nava's father, he accidentally caught his hand in the machine, resulting in the partial loss of two fingers. At the time of the incident, Nava was not assisting in the renovation and repair work, and therefore, he was not present when the injury occurred.

Salmeron filed a civil action against Nava for the damages arising from the injuries he sustained as a result of Nava's allegedly negligent maintenance of the saw. Nava filed a motion for summary judgment, which the trial justice granted. After entry of summary judgment Salmeron appealed.

Nava asserts that his summary judgment motion was properly granted because the undisputed facts demonstrated that Nava and Salmeron were engaged in a common or joint enterprise that, according to the rule set forth in *Farrar v. Edgewood Yacht Club,* 111 R.I. 376, 302 A.2d 782 (1973), would preclude recovery by Salmeron. Additionally, Nava argues that even without a finding of a common or joint enterprise, the entry of summary judgment in his favor was proper because Nava owed no duty of care to Salmeron. Furthermore, Nava posits that summary judgment was proper, based on Salmeron's assumption of the risk of being injured, even if there existed a common or joint enterprise. We conclude that Nava's position is entirely without merit and that Nava's motion for summary judgment was erroneously granted.

There clearly was no common or joint enterprise undertaken by the parties. "[T]he term 'common' or 'joint' enterprise means an association of two or more persons in the pursuit of a common purpose under such circumstances that each has the authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose; as a result of which the negligence of one participant may be imputed to another so as to bar recovery against a negligent defendant." *Farrar*, 111 R.I. at 380, 302 A.2d at 784.

The undisputed facts in this case fail to demonstrate that Salmeron had either a joint purpose with Nava or equal authority to execute a common purpose. Nava owned the house in which Salmeron's apartment was located, and Nava had explained to Salmeron that the apartment would be repaired according to Nava's own schedule and financial abilities. In addition Nava told Salmeron that the repairs would be made one room at a time, primarily on weekends, with the repair work being performed by Nava's friends and family. Salmeron nonetheless wanted to rent and live in the apartment despite its state of disrepair. Although Salmeron occasionally assisted in the repairs, there was no evidence before the trial justice that raised any inference that he did so because he wished to accomplish the same common objective as Nava, namely, repair of Nava's property. In fact, the case records suggest that Salmeron only took part in the renovations either because he felt indebted to Nava for the help Nava had provided in Salmeron's relocation to the United States or because he was simply doing Nava a favor. Thus, Salmeron's purpose in participating in the renovation project was entirely different from Nava's purpose in renovating the apartment, thereby negating any finding of a common or joint purpose.

Furthermore, there is no evidence in the case file record from which the hearing justice could conclude that Salmeron shared equal authority with Nava over the means or agencies employed in repairing Nava's apartment that had been rented by Salmeron. As a person completely indebted to Nava for both his existence, employment and housing in America, Salmeron was certainly not in a position to question the means or methods employed by Nava in executing the repairs that were being done to Nava's house. That fact was made clear from Nava's concession in his affidavit that he "told" Salmeron "that [he] would fix the apartment one room at a time while [Salmeron] was living there." In that same affidavit, Nava described how, on the day of the incident, *he* was putting up sheet rock and wallboard. Nava never mentioned in that affidavit or elsewhere that Salmeron had any input whatsoever in the decisions made regarding the means or methods employed in repairing the apartment. In fact, to the contrary, all of the case file evidence suggested that those decisions were made exclusively by Nava. Consequently, the undisputed facts militate against any finding of a joint enterprise.

Because we conclude that there were insufficient facts to support the finding of a joint enterprise, we must now examine whether there were sufficient facts before the trial justice to support a finding by him that Nava owed Salmeron any duty of care. We conclude that sufficient facts did exist.

"In Rhode Island 'negligence is the breach of a duty, the existence of which is a question of law.' *Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I.1985). 'Whether there exists a duty of care running from the defendant to the plaintiff is, therefore, a question for the court and not for the jury.' *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I.1987). * * * In *Banks* we stated:

'No clear-cut rule exists to determine whether a duty is in fact present in a particular case; however, courts such as the California Supreme Court have articulated several factors that may be applied to aid in that determination. In considering whether a duty exists, among the factors considered are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5)

the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.' *Id.* at 1225."

*Ferreira v. Strack,* 652 A.2d 965, 967–68 (R.I.1995).

We conclude that application of the above-stated factors to the specific case facts presented in this appeal mandates the finding of a duty. Nava intentionally placed the saw in the middle of Salmeron's apartment, knowing that it did not have a protective shield on it and knowing that persons volunteering to renovate the apartment, including Salmeron, would probably be using the saw. The placement of the saw in Salmeron's apartment with knowledge of its blade protection defect and with the possible use of the saw by Salmeron and others was clearly foreseeable and gave rise to at least a duty on the part of Nava to replace the blade protector or to warn of its absence and danger. The fact that Nava's brother, and not Nava, owned the saw is irrelevant in regard to whether Nava owed Salmeron any duty. Additionally, the burden on Nava to take reasonable steps to prevent such injuries as those that occurred to Salmeron was not great. Nava could easily have put a protective cover on the saw or have given notice or warning of its absence, placed the saw in his own first-floor residence, or told Salmeron specifically not to use the saw. Nava chose not to take any of those reasonable precautions. Accordingly, since we conclude that a duty existed, this case should have been permitted to go to the jury to decide whether any breach of that duty occurred and whether, as a result, Nava should be held liable for Salmeron's injuries.

■ The question of whether Salmeron assumed the risk of his injuries was also a question of fact for the jury.

"The doctrine of assumption of risk is an affirmative defense which, when applicable, operates to absolve a defendant of liability for having created an unreasonable risk. * * * When a person voluntarily proceeds, knowing and appreciating the danger, he will be held to have assumed the risk incident to his conduct.

Generally, the resolution of the issue of whether a plaintiff assumed the risk of injury is for the trier of fact. If the facts suggest only one reasonable inference, however, the issue becomes a question of law for the trial justice and may be the basis of a directed verdict." *Rickey v. Boden,* 421 A.2d 539, 543 (R.I.1980).

The facts of this case do not suggest that only one reasonable inference favoring assumption of the risk of injury by Salmeron could be drawn and therefore, the issue was not a question of law for the trial justice to decide. In his answer to Nava's request for admissions, Salmeron specifically denied (1) that he was instructed not to use the saw, (2) that he was not aware the saw had or was supposed to have a guard, (3) that he had seen the saw operated without a guard, (4) that he generally knew that saws, if improperly used, could cut off fingers, (5) that he "did not know that he did not know" how to operate the saw properly, and (6) that he realized prior to the accident that there was a blade on the saw and that contact with the blade while it was moving would cause harm. In fact, at his deposition Salmeron specifically testified that he had never used the table saw prior to the accident, that he did not know that there was supposed to be a guard on the saw, and that he did not know that "in different cases" table saws were dangerous. All the above factors raised a material question of fact in regard to whether Salmeron assumed the risk of his injuries. Accordingly, that factual issue should have been presented to a trial jury.

For all the foregoing reasons plaintiff's appeal is sustained; the summary judgment entered in the Superior Court is vacated, and the papers of the case are remanded to the Superior Court for further proceedings in accordance with this opinion.

WEISBERGER, C.J., and GOLDBERG, J., did not participate.