**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK**

v.

**DUDLEY SERVICE CORP.**

v.

**Stor-More Associates I, L.P.**

No. 91–58–M.P.

Supreme Court of Rhode Island.

April 16, 1992.

Anthony F. Muri, Valerie Connor, Goldenberg & Muri, Providence, for plaintiff.

John T. Walsh, John F. Kelleher, Higgins & Cavanagh, John L. Cosentino, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court pursuant to our grant of a writ of certiorari. The petitioner, Stor–More Associates I, L.P. (Stor–More), seeks review of a denial of its motion for summary judgment. For the reasons set forth herein, we reverse the decision of the Superior Court.

The facts pertinent to this case are as follows. In July 1988 Rhode Island Hospital Trust National Bank (Hospital Trust) filed a complaint against G.R. Industries, Inc. (G.R.I.), and obtained a writ of attachment against G.R.I.'s machinery, equipment, and inventory. A Providence County sheriff executed the writ and contacted Dudley Service Corporation (Dudley) to remove the property from G.R.I.'s premises.

On July 29, 1988, Dudley executed a lease agreement with Stor–More for the rental of a storage unit. Stor–More provides its customers with storage space and twenty-four-hour-security services. By the terms of the lease, Dudley agreed that it only rented the storage space and that Stor–More had no knowledge of what was stored in the unit. The lease provides in part:

"2. LESSOR SHALL NOT BE LIABLE FOR LOSS OR DAMAGE TO THE CONTENTS OF LESSEE'S UNIT, CAUSED BY ANY OF THE FOLLOWING WHETHER OR NOT THE LOSS OR DAMAGE IS DUE TO DISHONEST ACTS OR NEGLIGENCE OF LESSOR'S EMPLOYEES OR CUSTOMERS:

a. Theft or mysterious disappearance.

\* \* \* \* \* \*

"3. LESSEE AGREES TO MAKE NO CLAIM AGAINST LESSOR, ITS AGENTS OR EMPLOYEES FOR OR ON ACCOUNT OF ANY PERSONAL INJURY OR PROPERTY DAMAGE SUFFERED OR INCURRED BY REASON OF ANY OF THE FACTORS DESCRIBED IN THIS SECTION ON LEGAL LIABILITIES.

"4. Lessee will reimburse and hold harmless lessor for all damages to person or property expenses, costs, attorney's fees, judgments, claims or settlements paid or incurred by lessor which may arise out of lessee's (or his agents') use of the unit or his storage of goods in it. This reimbursement also applies to damages and claim of damage to the personal property of lessor, lessee and others by whoever made."

In addition the lease contains a provision concerning insurance and states: "INSURANCE: YOU UNDERSTAND THAT WE DO NOT HAVE INSURANCE COVERAGE FOR THE GOODS STORED IN YOUR UNIT FOR LOSS BY VANDALISM, FIRE, THEFT, WATER, WIND, ACT OF GOD OR OTHER CAUSE. I, AS LESSEE, INTEND TO PROTECT MY STORED PROPERTY AND HAVE RECIEVED [sic] AN INSURANCE BROCHURE." Dudley stored a portion of the inventory taken from G.R.I. at Stor–More's facility.

Hospital Trust obtained a judgment against G.R.I. In May 1989 the parties learned that the property stored in the Stor–More facility had allegedly disappeared. Thereafter, Hospital Trust brought suit against Dudley based upon claims of breach of contract, negligence, and conversion. Dudley subsequently filed a third-party complaint against Stor–More, seeking indemnification based on the theories of breach of contract, breach of warranty, and negligence. Hospital Trust was granted a partial summary judgment on its conversion claim against Dudley in the amount of $71,000.

Stor-More filed a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure, arguing that the parties intended by their clear and unequivocal contract to shift the risk of loss to Dudley. At the hearing on this motion the justice stated:

"You can't contract away future negligence.

\* \* \* \* \* \*

"You can't sit back and say I'll take a hundred bucks from you, I'll protect your property, but if I get very careless in protecting your property and permit someone to come in and take it away, you've already agreed I can take it away; I'm not going to be responsible. I don't buy that one at all."

Relying upon his belief that the parties were not free to contract away negligence, the justice denied Stor–More's motion. Thereafter Stor–More petitioned this court for a writ of certiorari.

■ Stor-More argues that the terms of the lease agreement signed by Dudley are clear and unambiguous. It also asserts that under the terms of the agreement Dudley agreed to indemnify and hold Stor–More harmless as a result of theft or mysterious disappearance for any loss of property stored in Stor–More's facility. Although Dudley did not file a brief, in its memorandum in support of objection for issuance of a writ of certiorari, it argued that the lease agreement "does not specifically set forth indemnification for the negligence of the lessor." At oral argument Dudley's attorney also asserted that the parties were not in an adequate bargaining position when they entered into the lease agreement. We disagree with Dudley's assertions.

■ We have previously upheld exculpatory-indemnification clauses that negate liability for an individual's own negligence if the clause is sufficiently specific. *Corrente v. Conforti & Eisele Co.*, 468 A.2d 920, 922 (R.I.1983); *see also Ostalkiewicz v. Guardian Alarm, Division of Colbert's Security Services, Inc.*, 520 A.2d 563, 566 (R.I.1987); *DiLonardo v. Gilbane Building Co.*, 114 R.I. 469, 472, 334 A.2d 422, 424 (1975). A contract will not be construed to indemnify the indemnitee against losses resulting from his or her own negligent acts unless the parties' intention to hold harmless is clearly and unequivocally expressed in the contract. *Corrente*, 468 A.2d at 922–23. Clear and unambiguous

language contained in a contract is controlling in regard to the parties' intent. *Chapman v. Vendresca*, 426 A.2d 262, 264 (R.I. 1981). We conclude that it is not violative of public policy for individuals to limit liability for their own negligence through an exculpatory-indemnification clause.

In *Ostalkiewicz*, the plaintiff contracted with Guardian Alarm for the installation and maintenance of a burglar-alarm system. The contract provided that Guardian Alarm "was not to be an insurer and that it would not be liable 'for any loss occasioned by malfeasance or misfeasance in the performance of the System or of the services under this Agreement or for any loss or damage sustained through burglary, theft, robbery, fire or other cause.'" 520 A.2d at 564. In upholding the validity of the liability clause, we determined that the parties had dealt at arm's length and that the terms of the contract clearly expressed that Guardian Alarm was not an insurer of the alarm system. *Id.* at 566. Therefore, we concluded not only that the indemnification clause contained in the contract was not unconscionable but also that it did not violate public policy. *Id.*

*DiLonardo* involved a contract whereby a subcontractor agreed to indemnify and hold harmless the general contractor for injuries resulting from the negligence of the general contractor. 114 R.I. at 471, 334 A.2d at 423–24. In this case we concluded that the exculpatory-indemnification contract shifted the liability of purchasing insurance coverage to the subcontractor. *Id.* at 472, 334 A.2d at 424. The parties were in equal bargaining positions; therefore, they were free to distribute the burden of acquiring insurance as they saw fit. *Id.*

■ Bearing these standards in mind, we are of the opinion that the lease agreement entered into by the parties is clear and unambiguous. By the express terms of the contract, Dudley agreed to hold Stor–More harmless for any loss sustained to the property stored in Stor–More's facility as a result of theft or mysterious disappearance. The contract clearly states that

Stor–More was not an insurer of the property in each storage unit. The exculpatory provision in the lease agreement shifted the burden to Dudley to purchase insurance for the property it stored at Stor–More's facility. It would be unreasonable to expect Stor–More to insure the contents of every storage unit at its facility. Stor–More retained no control over the unit rented by Dudley and had no way of knowing the nature and value of the property stored in that or any other unit. Despite the assertions of Dudley's attorney, the parties were in an equal bargaining position. Both parties were sophisticated and were dealing at arm's length when they entered into this lease agreement. The parties were free to enter into a contract that limited Stor–More's liability. The exculpatory provisions in the contract are clear and unambiguous expressions of the parties' intent that Dudley must accept full responsibility for any loss that occurred, even if caused by the negligence of Stor–More's employees. In the circumstances of this case we conclude that the limitation-of-liability provisions contained in the lease agreement are not violative of public policy and are enforceable as written.

 Rule 56(c) of the Superior Court Rules of Civil Procedure authorizes a trial justice to grant a motion for summary judgment when no genuine issue of material fact to be resolved exists. *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 761 (R.I. 1990); *Saltzman v. Atlantic Realty Co.*, 434 A.2d 1343, 1344–45 (R.I.1981). When determining whether any genuine issue of material fact does exist, the trial justice reviews the affidavits, pleadings, and other relevant documents in the case in the light most favorable to the opposing party. *Marandola v. Hillcrest Builders, Inc.*, 102 R.I. 46, 49, 227 A.2d 785, 787 (1967). On appeal we also consider whether there exists a genuine issue of material fact. *Lennon v. MacGregor*, 423 A.2d 820, 821 (R.I. 1980). If we discern no genuine issue of material fact, then we reverse the trial justice's denial of the motion for summary judgment.

We conclude that there existed no genuine issue of material fact with respect to Stor–More's liability. We therefore reverse the trial justice's decision denying Stor–More's motion for summary judgment.

Accordingly the petition for certiorari is granted, the decision of the trial justice is quashed, and the record certified to this court is ordered returned to Superior Court with our decision endorsed thereon.

KELLEHER did not participate.