[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is a motion for summary judgment filed by the defendant Dover Investment Properties Inc.
The plaintiff rented a self-storage unit from the defendant. Another individual, the co-defendant, allegedly caused a fire in his unit which also damaged or destroyed the plaintiff's property. The plaintiff's cause of action against Dover is based on negligence — the claim is that the lessor Dover knew or should have known the hazardous activities the co-defendant was engaging in and should have taken measures in the exercise of reasonable care to correct and remedy the careless and negligent acts of the co-defendant lessee who caused the fire leading to the destruction of the plaintiff's two automobiles and other personal property which he kept in the storage unit.
The defendant Dover moves for summary judgment claiming that it cannot be held liable as a matter of law CT Page 7275 even if the allegations of negligence made against it were found to be true. The defendant relies on the lease agreement entered into by the parties when the storage unit was rented which it claims entitles it to be held harmless and indemnified by the lessee for any negligent acts; the defendant cannot "be held responsible for damage to the plaintiff's property."
The terms of the lease agreement are clear and to the point, key provisions set forth in various paragraphs state the following:
 "Landlord (i.e. Dover) shall not be liable to any tenant (i.e. plaintiff) or any other party for any negligent act or omission of landlord."
 "All property stored within the unit by tenant shall be at tenant's sole risk and expense."
 "Landlord shall not be liable to tenant for any loss or damage that may be occasioned by or through the act or omission to act of other tenants on the premises or of any other person."
The agreement contains an addendum wherein the lessee, here the plaintiff, acknowledges he received a copy of the agreement and states "I understand the provision that states the lessor is not responsible for loss or damage to property in my storage space," and further acknowledges an understanding that the lessor doesn't provide insurance coverage on the property the lessor stores in his unit.
It is clear that by entering into this agreement the defendant Dover intended to absolve itself from responsibility for the very type of occurrence and resulting damages that form the basis of this suit.
The plaintiff doesn't deny this or even claim that the explicit terms of the contract, if the contract were to be enforced, would not protect the defendant Dover against any liability claim made in this case. The plaintiff rather claims that the provisions of such a contract, protecting a negligent actor from the consequences of its own actions cannot be enforced because to do so would violate important principles of public policy. CT Page 7276
There is no genuine issue of material fact between the parties and the resolution of this motion depends on a decision as to a question of law. This is the type of case which is appropriate for use of summary judgment procedure.Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984).
Several conflicting considerations are involved in the resolution of this case.
On the one hand basic to an economy built on contractual relations and the enforcement of contract expectations, is the notion that the terms of a contract must be given their ordinary meaning because a party is entitled to rely on its written contract to determine its rights or duties Farmers Mechanics Savings Bank v. FirstFederal Savings Loan Assn., 167 Conn. 294, 302 (1974), cfSouthern New England Contracting Co. v. Norwich RomanCatholic Diocesan Corp. , 175 Conn. 197, 199 (1978). Thus it has been held that "contracts voluntarily and fairly made should be held valid and enforceable by the courts",Collins v. Sears Roebuck Co., 164 Conn. 369, 377 (1973). Because of this view and the policy considerations behind it the construction of a contract can't be changed "by reason of its inconvenience to the parties or the unreasonableness of the terms", Lakitsch v. Brand, 99 Conn. 383,393 (1923).
The plaintiff cites several cases for the proposition that the law doesn't favor contract provisions which relieve a party to the contract from its own negligence.
The plaintiff cites several bailment cases which as the defendant notes are not really relevant to the question now before the court. In a bailment case the bailee has custody and control over the property. It would be offensive to public policy to permit the bailee in such a situation to relieve itself of the consequences of its own negligence, Griffin v. Nationwide Moving Storage Co.,187 Conn. 405, (1982), Malone v. Santora, 135 Conn. 286 (1949).
This is not a bailment situation, the defendant here unlike a bailee had no custody and control of the property. The plaintiff stored its own property in its assigned self-storage unit. Thus in Malone the court indicates that an CT Page 7277 agreement absolving the parking lot owner from liability for theft of the car would be valid where the car owner merely pays a fee parks the car and locks it as he or she wishes.
Also other cases cited by the plaintiff are not exactly on point. Rodriguez v. Gilbertie et al, 33 Conn. Sup. 582
(1976) and Parillo v. Housing Authority, 16 Conn. Sup. 106
(1949) do involve cases where the courts refused to allow the defendants to take advantage of a contract provision that sought to absolve them from damages to the plaintiff in situations where they were at fault. In both cases, however, the alleged actions of the defendant involved violation of statutory or building code provisions. Clearly private parties such as landlords or home builders should not be allowed to absolve themselves from liability to tenants or homeowners imposed on them for violation of public law meant to protect classes of people that legislative authority has deemed to be vulnerable and in need of protection.
Fedor v. Mauwehu Council ,21 Conn. Sup. 38, 39 (1958) involved a situation where a minor child was injured at a Boy Scout Camp by the alleged negligence of the camp operators. The court granted a demurrer to a special defense that alleged the minor plaintiff through his father had signed as a condition of sending the child to camp a waiver of all claims for any injury suffered by the child. Clearly the parent or guardian of a child in such a situation should not be able to sign away the child's rights and public policy should forbid the enforcement of such a hold harmless agreement which the child did not and could not have consented to.
To put the best face on the plaintiff's argument it could be argued that even in a situation where for example a bailee doesn't assume control over the property a hold harmless clause should be held to be against public policy where actual control of lack of control of the property had nothing to do with the type of loss involved. In other words in the parking lot situation if the car owner parks the car and keeps the keys but forgets to lock the car and it's stolen certainly it would not be unfair in such a situation to uphold a provision in the agreement between the parties which absolved the lot owner from CT Page 7278 responsibility for theft of the car — Malone indicates that would be the result in a case of that type. But what if the car wasn't stolen because the owner who kept the keys left the door unlocked? What if the car, locked by the owner, was stolen by individuals whose demeanor was suspicious and were seen or should of been seen by the lot operator walking through the lot with dent pullers, coat hangers and other devices used by professional car thieves? In other words in this case the fact that the plaintiff had personal and exclusive control over his storage unit and its contents had nothing to do with the negligent and careless activity of the co-defendant lessee of a unit which led to the destruction of the plaintiff's property — activity which the plaintiff claims the defendant Dover knew or should have known about and had a means to prevent or control?
In the court's opinion such reasoning though superficially persuasive still does not warrant a finding by the court that the enforcement of a hold harmless clause in a self-storage contract would be against public policy.
A court should be cautious about holding contract provisions unenforceable because of violations of public policy unless the public policy reasons are absolutely clear such as barring attempted abrogation of ameliorative statutes or rectification of completely uneven bargaining power where a minor's interest for example are sought to be bound in an unfavorable way.
The enforcement of contract provisions such as the one before the court absolving owners of self-storage units from the consequences of their own negligence or failure to prevent the negligent activity of others has been explicitly upheld in two well reasoned cases RI HospitalTrust National Bank v. Dudley Service Corp et al,605 A.2d 1325 (R.I., 1992) Whipper v. McLendon Movers,372 S.E.2d 820 (Ga., 1988). A recent Superior Court opinion granted a motion for summary judgment in another property damage case arising apparently out of the same fire that caused the damage here and that case dealt with the same issues as raised in this motion Crawford v. Dover InvestmentProperties, Sup. Ct., Middletown, Docket No. 68019S, 1994). The defendant has also cited Burke v. Car a Truck LeasingCo., 1 Conn. App. 54 (1983) which upheld a hold harmless CT Page 7279 clause in a car leasing contract. The general language of that case supports the defendant's position but the validity of such clauses should be examined in the context of the type of contractual relation where they are used.
The Rhode Island Hospital case presents good reasoning for its position which is really based on a rational assignment of risks and possible losses given the knowledge of the parties at the time of contract formation. Speaking of the hold harmless clause in the contract before it the court said:
 "The exculpatory provision in the lease agreement shifted the burden to (the lessee) to purchase insurance for the property it stored at Stor-More's facility. It would be unreasonable to expect Stor-More to insure the contents of every storage unit at its facility. Stor-Mor retained no control over the unit rented by (the lessee) and had no way of knowing the nature and value of the property stored in that or any other unit". 605 A.2d at page 1328.
Regarding any claim of unequal bargaining power theWhipper case said the following in upholding a provision in a storage unit contract that it was the lessee's responsibility to procure any insurance:
 "The appellant has not alleged that she was induced to accept the provision by misrepresentation, mistake, duress, or undue influence; nor can the provision be considered one of adhesion, no reason having been asserted why the appellant would not have been free to attempt either to negotiate a modification of the insurance requirement (in return presumably for an increased rental fee) or to make other arrangements for the storage of her property." 372 S.E.2d at page 821.
The invalidation of hold-harmless clauses in contracts regarding these self-storage units would run the risk of increasing rental fees in an industry that provides a real service to people whose resources would not otherwise allow them to store their goods. These cost considerations are CT Page 7280 perhaps best resolved in a legislative forum rather than by judicial fiat and the creation of what in effect would be court imposed regulatory restrictions on the self-storage industry.
In the Rhode Island case their Supreme Court reversed the trial court's refusal to grant summary judgment to the storage unit company; the Georgia Court of Appeals case sustained the trial court's granting of such a motion. This matter is susceptible to consideration on a motion for summary judgment.
The defendant's motion is granted.
Corradino, J.