Michael L. Woodruff         :

v.                   :

Stuart Gitlow, M.D.        :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael L. Woodruff         :

v.                   :

Stuart Gitlow, M.D.         :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** Does a physician who was hired by the Federal Aviation Administration (FAA) to conduct an independent medical records review owe a duty of care to the subject of the review? In our opinion, under the situation presented in this case, he does not. The FAA engaged the defendant, Dr. Stuart Gitlow, to review the medical records of the plaintiff, Michael L. Woodruff, and to make a recommendation about the plaintiff's fitness to have his medical certificate reinstated. Woodruff had voluntarily surrendered his medical certificate to the FAA after a motor-vehicle accident that occurred in September 2008, and he sought reinstatement in 2009. Doctor Gitlow conducted his review of Woodruff's medical records and concluded that Woodruff fell within the FAA's regulatory definition for substance dependence. After the FAA denied the plaintiff's application, Woodruff filed suit in Superior Court, alleging that Dr. Gitlow was negligent in making his report and that the FAA had relied on Dr. Gitlow's conclusion to Woodruff's detriment. A justice of the Superior Court denied the defendant's motion for summary judgment, and Dr. Gitlow filed a petition for a writ of certiorari

with this Court, which we granted on September 10, 2012. For the reasons set forth in this opinion, we quash the order of the Superior Court.

**I**

**Facts and Travel**

The plaintiff has been a commercial pilot since 1988, working as a crop duster in Kansas and other states. In September 2008, Woodruff was involved in a motor-vehicle accident, after which he surrendered his second-class medical certificate at the request of the FAA. In addition to other requirements, the FAA requires that, to be eligible to pilot commercial aircraft, all pilots obtain and maintain a valid medical certificate. See 14 C.F.R. § 61.3(c) (2014). After recovering from the effects of the 2008 accident, Woodruff sought reinstatement from the FAA.

After he had reviewed Woodruff's medical records, the FAA's chief psychiatrist, Dr. Charles Chesanow, concluded that Woodruff met the FAA criteria for alcohol dependence, which would necessitate treatment and recovery to the satisfaction of the Federal Air Surgeon before Woodruff could receive the medical certificate. Doctor Chesanow requested that the FAA refer Woodruff's medical records to Dr. Gitlow, a psychiatrist, to determine if he concurred with Dr. Chesanow's opinion. As a result, the FAA retained defendant as a medical consultant to review certain medical documents and opine whether Woodruff met the FAA's criteria for alcohol dependence.

In July 2009, the FAA provided Dr. Gitlow with portions of what were purported to be plaintiff's hospital, medical, and driving records, along with FAA forms that had been filled out by Woodruff. When he was later deposed, Dr. Gitlow testified that the records that he had received were only a "fraction" of plaintiff's entire file, that he did not physically examine Woodruff, and that he made his conclusions based solely on the documents that the FAA had

- 2 -

provided to him.[1]    After reviewing the documents, Dr. Gitlow submitted his analysis to Dr. Chesanow on August 10, 2009.   In it, Dr. Gitlow ultimately concurred that Woodruff was substance dependent as that condition is defined by the FAA regulations.

On November 24, 2010, plaintiff filed suit in Superior Court, alleging that Dr. Gitlow's evaluation had been negligently performed and that his report caused the FAA to deny Woodruff's application to renew his medical certificate.   Woodruff further alleged that because he failed to regain his medical certificate, he was unable to resume working as a crop duster.   On October 19, 2011, after both sides had engaged in discovery, Dr. Gitlow filed a motion for summary judgment in which he argued that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law for two reasons.   First, Dr. Gitlow argued that he did not owe Woodruff a duty of care, and second, Dr. Gitlow maintained that he had immunity because his report was protected by this state's Anti-SLAPP statute pursuant to G.L. 1956 § 9-33-1.

After hearing argument from the parties on January 3, 2012, a justice of the Superior Court denied Dr. Gitlow's motion for summary judgment.   The trial justice concluded that there was a material issue of fact "as to what Dr. Gitlow's relationship, if any, was to the plaintiff in

---

[1] The files Dr. Gitlow reviewed included a number of documents, some of which supported Dr. Gitlow's ultimate conclusion, but also some that contained inaccuracies.   For example, Dr. Gitlow reviewed an FAA form 8500-8, ironically prepared and signed by Woodruff, indicating that Woodruff had been arrested for driving under the influence in March 1988.   The file also included a 2004 Alcohol and Drug Safety Action Program (ADSAP) evaluation in which Woodruff indicated that he regularly consumed significant quantities of alcohol.   On the other hand, in making his report, Dr. Gitlow relied upon infractions in the provided driving records that were alleged to be Woodruff's, but were clearly those of an unrelated third party.   Because the only question before this Court is whether Dr. Gitlow owed a duty of care to Woodruff, we need not address whether Dr. Gitlow was in any way negligent in the preparation of the report.

the context of this so-called records review."[2]  The trial justice conceded that the parties did not have a direct physician-patient relationship and that Dr. Gitlow had not physically examined Woodruff, but he nonetheless determined that there was authority under the Restatement (Second) Torts § 552 (1977) to conclude that a duty might arise in situations like the one present here.  On February 23, 2012, Dr. Gitlow filed a petition for a writ of certiorari to this Court, which we granted on September 10, 2012.  In the order granting certiorari, we directed the parties to address whether, in this case, Dr. Gitlow, whom the FAA had hired to prepare a medical report, owed Woodruff a duty of care in the preparation of the report.[3]

Before this Court, defendant presses three arguments.  First, Dr. Gitlow argues that the trial justice erred when he held that there was a genuine issue of material fact as to the parties' relationship.  Second, Dr. Gitlow maintains that he did not owe Woodruff a duty of care to accurately reach or report the conclusions of his records review.  Finally, defendant asserts that his statements to the FAA are protected by the Anti-SLAPP statute.

---

[2] We pause to note that in his amended complaint, Woodruff did not claim Dr. Gitlow had committed medical malpractice, but only that he had been negligent in compiling his report. Neither party has asserted that Dr. Gitlow had entered into a doctor-patient relationship with Woodruff.  The existence of a doctor-patient relationship is a significant consideration in a medical-malpractice action, but is less relevant for a simple negligence claim.  See Vigue v. John E. Fogarty Memorial Hospital, 481 A.2d 1, 6 (R.I. 1984) (discussing that at common law malpractice was consistently applied solely to the negligence of physicians and surgeons).

[3] The order granting the petition for the writ of certiorari says:

> "The parties are directed to address in their Rule 12A statements the issue, amongst others which the petitioner may deem it appropriate to raise, of whether in the circumstances of this case the petitioner, in preparing a medical report concerning the respondent at the request of, and for presentation to, a federal agency, owed the said respondent a duty of care in its preparation, which duty, if not adhered to, could furnish the basis for the imposition of liability for [the] petitioner's alleged negligence."

## II

## Standard of Review

"Our review of a case on certiorari is limited to an examination of 'the record to determine if an error of law has been committed.'" State v. Poulin, 66 A.3d 419, 423 (R.I. 2013) (quoting State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008)). "Questions of law * * * are not binding upon the [C]ourt and may be reviewed to determine what the law is and its applicability to the facts." Huntley v. State, 63 A.3d 526, 530-31 (R.I. 2013) (quoting State v. Shepard, 33 A.3d 158, 163 (R.I. 2011)). We will reverse only when we find that the hearing justice committed an error of law. Id.

When we grant certiorari after a denial of a motion for summary judgment, "our review is governed by the same standard of review that applies to a grant of summary judgment." Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005) (citing McKinnon v. Rhode Island Hospital Trust National Bank, 713 A.2d 245, 247 (R.I. 1998)). "It is well established that this Court reviews a trial justice's decision to grant summary judgment de novo, 'employing the same standards and rules used by the [trial] justice.'" Reynolds v. First NLC Financial Services, LLC, 81 A.3d 1111, 1115 (R.I. 2014) (quoting Inland American Retail Management LLC v. Cinemaworld of Florida, Inc., 68 A.3d 457, 461 (R.I. 2013)). Therefore, "if, 'after viewing the evidence in the light most favorable to the nonmoving party, [we conclude] that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law,' we will affirm the judgment." Id. (quoting Cinemaworld of Florida, Inc., 68 A.3d at 461).

## III

## Discussion

## A

## Genuine Issues of Material Fact

Before this Court, Dr. Gitlow first argues that the trial justice committed reversible error when he found that the extent of the relationship between Woodruff and Dr. Gitlow was a genuine issue of material fact and that, as a result, he was precluded from granting the motion for summary judgment. Doctor Gitlow contends that the facts of the case are not in dispute: the FAA retained Dr. Gitlow to review certain medical records and render an opinion as to whether Woodruff was chemically dependent; Dr. Gitlow based his opinion solely on the records the FAA presented to him; and Dr. Gitlow never physically examined Woodruff or had any contact with him whatsoever. Neither before this Court, nor in the Superior Court has Woodruff offered competent evidence to dispute Dr. Gitlow's statements of fact or even disagree with Dr. Gitlow's version of the facts. Generally, if the nonmoving party does not dispute the facts, we will determine if the moving party is entitled to judgment as a matter of law. See Boucher v. McGovern, 639 A.2d 1369, 1374 (R.I. 1994).

However, in this case, the trial justice determined that there was an issue of material fact surrounding whether a physician-patient relationship existed between the parties. "Rule 56(c) of the Superior Court Rules of Civil Procedure authorizes a trial justice to grant a motion for summary judgment when no genuine issue of material fact to be resolved exists." Rhode Island Hospital Trust National Bank v. Dudley Service Corp., 605 A.2d 1325, 1328 (R.I. 1992). The trial justice makes this determination after he reviews "the affidavits, pleadings, and other relevant documents in the case in the light most favorable to the opposing party." Id. Because

our standard of review is de novo, we also may scrutinize the record to determine the existence of genuine issues of material fact, and if we find none, we may reverse the trial justice's denial of the motion for summary judgment. Id.

Whether the establishment of a physician-patient relationship is a question of fact to be determined by the jury or a matter of law to be determined by the court is an issue of first impression for the Court. Our review of the approach taken by other jurisdictions reveals that the majority of jurisdictions have held that in medical malpractice and negligence cases, the existence of a physician-patient relationship is a question of fact for the jury. See Wolf v. Fauquier County Board of Supervisors, 555 F.3d 311, 320 (4th Cir. 2009) (holding, under Virginia law, that the existence of a physician-patient relationship is a question of fact); Garcia v. City of Boston, 115 F. Supp. 2d 74, 78 (D. Mass. 2000) (holding, under Massachusetts law, that the existence of a relationship is a question of fact), aff'd, 253 F.3d 147 (1st Cir. 2001); Nold ex rel. Nold v. Binyon, 31 P.3d 274, 288 (Kan. 2001) (holding that the existence of a relationship is for a jury to decide). But see Dixon v. Siwy, 661 N.E.2d 600, 607 (Ind. Ct. App. 1996) (holding that the existence of a relationship is a legal question for the court to decide).

We need not reach that question, however, to decide this case. Generally, summary judgment is inappropriate for negligence claims as they "should be resolved by trial in the ordinary manner." DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I. 2013) (quoting Gliottone v. Ethier, 870 A.2d 1022, 1028 (R.I. 2005)). This is "because of the peculiarly elusive nature of the concept of negligence." Gliottone, 870 A.2d at 1028 (quoting Bland v. Norfolk and Southern Railroad Co., 406 F.2d 863, 866 (4th Cir. 1969)). Even if we were to conclude that this determination is a question for the jury, it is well settled that the trial justice may resolve the issue as a matter of law "if the facts suggest only one reasonable inference." Berard v. HCP,

- 7 -

Inc., 64 A.3d 1215, 1218 (R.I. 2013) (quoting DeMaio, 59 A.3d at 130). This viewpoint comports with the approach of the Oklahoma Supreme Court on a motion for summary judgment in a medical malpractice case. Jennings v. Badgett, 230 P.3d 861 (Okla. 2010). In that case, the court ruled that the existence of a physician-patient relationship is a question of fact; however, "[o]n a motion for summary judgment when the material facts are undisputed and the evidentiary materials and facts show one party is entitled to judgment, the court may decide the issue as a matter of law." Id. at 867. We disagree with the trial justice that there was a genuine issue of material fact and are of the opinion that the undisputed facts lead to only one reasonable conclusion. We conclude, as a matter of law, that the record does not establish a traditional physician-patient relationship. However, this conclusion does not end our inquiry because Dr. Gitlow, even in the absence of a traditional physician-patient relationship, may have nonetheless owed Woodruff a duty of reasonable care.

**B**

**Was There a Duty?**

Doctor Gitlow next argues that he did not owe any duty of care to Woodruff because, as a physician retained by a third party to review records and render an opinion, he was not liable for any alleged lack of care in the conclusions he reported. To succeed on a negligence claim, "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." Wyso v. Full Moon Tide, LLC, 78 A.3d 747, 750 (R.I. 2013) (quoting Willis v. Omar, 954 A.2d 126, 129 (R.I. 2008)). Although generally it may be inappropriate to dispose of a negligence claim on summary judgment grounds, a court may resolve the duty element without a trier of fact because "the existence of a duty is nonetheless a question of law." Id. (citing Ouch

v. Khea, 963 A.2d 630, 633 (R.I. 2009)).  "In the absence of such a duty, 'the trier of fact has nothing to consider and a motion for summary judgment must be granted.'"  Id. (quoting Holley v. Argonaut Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009)).  We have not previously considered the duty, if any, that a doctor would owe to a patient when the doctor has been hired by a third party to provide an opinion about the patient based solely on the review of the patient's records.  In their papers to this Court, both parties point to several other jurisdictions that have addressed similar questions.

**1**

**Jurisdictional Perlustration**

First, the majority of courts, primarily in cases sounding in medical malpractice, have held that doctors who have been engaged to perform an independent medical examination do not owe a duty of care to the patient because there is no physician-patient relationship.  See, e.g., Smith v. Radecki, 238 P.3d 111, 115 & n.13 (Alaska 2010) (concluding, after a review of other state analyses, that there was no physician-patient relationship and thus no duty of care); Martinez v. Lewis, 969 P.2d 213, 218-19 (Colo. 1998) (en banc) (holding that an independent evaluation did not give rise to a doctor-patient relationship and therefore no duty was owed); Erpelding v. Lisek, 71 P.3d 754, 760 (Wyo. 2003) (noting that the court's conclusion of no duty is in accord with nearly every other jurisdiction that has reached the issue).  Second, and more importantly for our purposes, in two circumstances, after concluding that no professional relationship existed between the examiner and examinee, some courts have found that there is a limited duty under common-law negligence.  Those courts have reasoned that even when hired to conduct an independent evaluation, under common-law negligence principles, a doctor would still owe a duty to avoid causing harm to a patient.  See Harris v. Kreutzer, 624 S.E.2d 24, 31

(Va. 2006); see also Dyer v. Trachtman, 679 N.W.2d 311, 314-17 (Mich. 2004) (finding, after a thorough review of the approach in other states, a limited duty to not cause harm to the patient). In Peace v. Weisman, 368 S.E.2d 319 (Ga. Ct. App. 1988), the Department of Resources hired a physician to determine the plaintiff's fitness to return to work. In denying the patient's medical malpractice claim, the court held as a matter of law that the parties did not establish a physician-patient relationship and that the doctor's only duty to the patient under a theory of negligence "was to conduct the examination in such a manner as not to injure him." Id. at 321.

Furthermore, a smaller number of courts have found that an independent medical examiner (IME) has a duty of reasonable care to diagnose serious or life-threatening medical conditions and to disclose such discovered conditions directly to the examinee. See, e.g., Daly v. United States, 946 F.2d 1467, 1470 (9th Cir. 1991) (holding, under Washington law, that even in the absence a doctor-patient relationship, a physician who conducted a pre-employment physical owed a duty to inform the examinee of identified abnormalities); Green v. Walker, 910 F.2d 291, 296 (5th Cir. 1990) (holding, under Louisiana law, that a pre-employment examination creates a limited doctor-patient relationship, obligating the doctor to inform the patient of any test results that pose an imminent danger to the patient's physical or mental well-being); Stanley v. McCarver, 92 P.3d 849, 853 (Ariz. 2004) (en banc) (finding a limited duty of reasonable care for a physician, despite the existence of no formal relationship to the patient, to diagnose serious or life-threatening conditions).

A striking difference, however, between those cases and the one before us on appeal is that Dr. Gitlow never examined Woodruff but merely reviewed the records provided to him by the FAA. In fact, our research has revealed only one case that bears even some resemblance to the one before us. In Rand v. Miller, 408 S.E.2d 655, 656 (W. Va. 1991), the Supreme Court of

West Virginia addressed liability in a medical-malpractice action when the physician was hired by the United States Postal Service (USPS) to review the medical records of a prospective employee and rendered an inaccurate report, resulting in the USPS not hiring the applicant. The court declined to answer "the question of whether a physician hired by an employer to examine an employee is totally immune from a malpractice action brought by the employee," but did note that any relationship between the employee and the doctor is even more tenuous when there is no physical examination. Id. at 658. Because the applicant filed a medical-malpractice claim, however, the court's analysis centered on the existence of a doctor-patient relationship, which is irrelevant to our consideration. Id. at 656-57.[4]

Here, both parties characterize Dr. Gitlow's actions as those of an IME even though no physical examination occurred. Generally, when our jurisprudence has employed the term "independent" or "impartial medical examiner," the cases have involved court-appointed IMEs under our workers' compensation statutes. See Poudrier v. Brown University, 763 A.2d 632, 634 (R.I. 2000); see also Zecchino v. State, 520 A.2d 139, 140 (R.I. 1987) (discussing the employee's election to have an impartial medical examiner appear before a workers' compensation committee for purposes of cross-examination). In all our cases involving the use of an IME, the examinee has submitted to a physical examination. In contrast, Woodruff predicates his claims on the purported negligence of Dr. Gitlow during his review of the FAA-provided files.

Recognizing that he urges us to adopt what is a decidedly minority position, Woodruff argues that this Court should embrace the position taken by the Supreme Court of New Jersey in Reed v. Bojarski, 764 A.2d 433, 441 (N.J. 2001). We decline to do so. In Reed, 764 A.2d at

---

[4] The complaint in this case is cast as one of simple negligence, not medical malpractice.

434-35, a physician, Bojarski, was hired by a third party to administer a pre-employment physical examination to Reed. During the examination, the physician became aware that the plaintiff had signs of lymphoma, but he did not convey that information to the employer, who had ordered the exam. Id. at 435. Seven months later, an X-ray showed a large mass in the plaintiff's mediastinum, and he was diagnosed with late-stage Hodgkins disease.[5] Id. The plaintiff passed away eight months later at the age of twenty-eight. Id. Woodruff contends that the court in Reed held that an IME has a duty to perform professionally reasonable and competent examinations or diagnoses. But our review of Reed points to a more narrowly channeled duty. The court based its decision on the state board of medical examiners' regulations which impose a duty that "includes and encompasses an affirmative obligation of disclosure in those circumstances where potentially life-threatening abnormalities or conditions are discovered during the course of examination." Reed, 764 A.2d at 444. The court concluded that the IME owed the examinee a duty of care "to the extent of the examination and in communicating its outcome." Id. at 445. There can be no dispute that the facts of the case at bar do not remotely fall within the scope of this duty. Doctor Gitlow conducted no physical examination, did not discover a life-threatening ailment, nor did he fail to disclose any such condition to the FAA. We question whether Woodruff's claims would be colorable even in New Jersey.

Our research reveals that very few courts have addressed physicians who, as here, have merely reviewed files. These infrequent cases are rooted in determinations of whether an

---

[5] "The mediastinum is that space lying within the chest. It is bounded on each side by the lung cavities. Within the mediastinum are found the heart, esophagus, the aorta[,] and vena cava." Wilkinson v. Vesey, 110 R.I. 606, 611 n.3, 295 A.2d 676, 681 n.3 (1972).

agency's denial of benefits, based on a file review, was arbitrary and capricious or whether the subsequent report filed by a file-only physician review is medically reliable. See Calvert v. Firstar Finance, Inc., 409 F.3d 286, 295 (6th Cir. 2005) (holding that a file review is not "inherently objectionable," but "may * * * raise questions about the thoroughness and accuracy of the benefits determination"); Gannon v. Metropolitan Life Insurance Co., 360 F.3d 211, 214 (1st Cir. 2004) (deciding that a nonexamining physician's review of a claimant's files was nonetheless medically reliable evidence). There appears to be little support in other jurisdictions to which we can look for guidance on this matter.

## 2

### The Restatement (Second) Torts

During the hearing on the motion for summary judgment, the trial justice said that there was authority in the Restatement (Second) Torts § 552 for the proposition that a duty arises in this type of situation. Section 552 is entitled "Information Negligently Supplied for the Guidance of Others." It says:

> "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id. at 126-27.

Significantly, liability is limited "to loss suffered * * * by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information." In this case, the person or group that engaged Dr. Gitlow and that was intended to benefit from his report was the FAA and not Woodruff. The FAA retained Dr. Gitlow, and there is neither evidence nor a claim that the FAA suffered a loss because of anything he may have done or failed to do.

- 13 -

Section 552(2)(b) of the restatement also limits liability to loss suffered "through reliance upon [the information] that he intends the information to influence or knows that the recipient so intends * * * ." The record simply does not support an assertion that Woodruff relied upon Dr. Gitlow's report and suffered a loss due to that reliance. In our opinion, the trial justice's use of § 552 of the restatement to discern a duty in this case was misplaced.[6]

**3**

**The Ad Hoc Approach**

Because our review of other jurisdictions has not provided direction in resolving this case, we will use our familiar ad hoc approach to decide whether Dr. Gitlow owed a duty to Woodruff. We determine whether a duty exists by "employ[ing] an ad hoc approach that 'turns on the particular facts and circumstances of a given case.'" Ouch, 963 A.2d at 633 (quoting Benaski v. Weinberg, 899 A.2d 499, 502 (R.I. 2006)). We consider "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." Gushlaw v. Milner, 42 A.3d 1245, 1252 (R.I. 2012) (quoting Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003)). Although "[n]o clear-cut rule exists to determine whether a duty is in fact present in a particular case," we have outlined five factors that should be considered when determining the presence of a duty. Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987). Those factors are:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting

---

[6] In his papers with this Court, Woodruff did not address the applicability of Restatement (Second) Torts § 552 (1977). Also, it is worth noting that this Court has not adopted § 552.

liability for breach." Bucki v. Hawkins, 914 A.2d 491, 495-96 (R.I. 2007) (quoting Banks, 522 A.2d at 1225).

In considering the Banks factors we have limited the applicability of the finding of a duty to a particular appeal because the factors are "case specific and should not be taken or construed to limit the scope of factors that we shall consider in future cases involving different factual situations." Ferreira v. Strack, 636 A.2d 682, 685 n.2 (R.I. 1994).

There is no question that the parties did not have a doctor-patient relationship in the traditional sense; however, Woodruff urges this Court to nonetheless find that an independently hired physician owes a duty to the examinee to render a professionally reasonable and competent evaluation of his medical records. Applying Banks to the case before us, upon initial review, the first three factors appear to tip in Woodruff's favor. With respect to the first two, the foreseeability of harm and the degree of certainty that Woodruff suffered an injury, a finding by Dr. Gitlow of alcohol dependence would foreseeably cause Woodruff economic harm to a high degree of certainty. Also, the third factor, discussing the closeness of connection between Dr. Gitlow's conduct and the injury suffered, appears to favor Woodruff because he argues that Dr. Gitlow's report was the sole determination that resulted in the FAA denying his medical certificate.[7]

However, with a more discriminating eye, these considerations are resolved ultimately for Dr. Gitlow. Keeping in mind that we construe all facts in favor of the nonmoving party, whether Dr. Gitlow was or was not negligent does not implicate foreseeability because Woodruff was harmed by the conclusion that he was alcohol dependent, not by the means undertaken by Dr. Gitlow in reaching that conclusion. This is unlike the situation in Daly, 946 F.2d at 1468,

---

[7] For the purposes of this appeal, we accept this assertion; however, our review of the record reveals no support for it.

where a doctor's failure to disclose the existence of lung disease resulted in the patient learning about the disease only after it had reached the stage where it was incurable. The allegation in that case was that had the doctor acted competently, the patient would have learned of his condition while it remained treatable. Here, however, either a competent or negligent evaluation could have resulted in a finding of alcohol dependence, the determination of which caused the harm suffered. Also, it would appear that the initial conclusion of Dr. Chesanow, the FAA's chief psychiatrist, that Woodruff was alcohol dependent dampens the foreseeability of harm and militates against the degree of closeness to defendant's conduct and the injury suffered. The FAA's chief psychiatrist, having made his own evaluation, essentially asked Dr. Gitlow for a second opinion, which seems to untether the connection between Dr. Gitlow's conduct and the injury.

In our opinion, the fourth and fifth factors weigh heavily in Dr. Gitlow's favor. With respect to the fourth factor, the policy of preventing future harm, it is our opinion that imposing the duty sought by Woodruff would do little to prevent future harm because the harm Woodruff suffered arose from the conclusion that he was alcohol dependent; a conclusion that the FAA had already reached. The harm suffered by Woodruff was the alcohol-dependence outcome, not the process, whether performed negligently or competently by Dr. Gitlow. Also, the availability of alternate remedial avenues incentivizes state and federal agencies to hire independent medical evaluators who will perform their duties competently. See Erpelding, 71 P.3d at 759. Because the agency often provides several levels of administrative appeals, an incompetent review, whether performed by the agency itself or by an outside consultant would be more likely to receive greater scrutiny on appeal. Here, the denial of a medical certificate is subject to

administrative review pursuant to FAA regulations.[8]  See 14 C.F.R. § 67.409 (2014).  Likewise, we believe that the fifth factor, the consequences of exposing file-review physicians to liability, could result in a chilling effect on their willingness to serve as independent evaluators.  See Martinez, 969 P.2d at 219.  Furthermore, physicians may be inclined to produce a report more favorable to the applicant to avoid a subsequent lawsuit, "in which the examinee alleges the IME physician negligently made the report."  Id.; see Erpelding 71 P.3d at 759 (discussing the serious impact on an independent examiner's objectivity when he must conduct the examination "with one eye studying the prospect of being sued by the examinee").

After considering all of the factors and construing the facts in the light most favorable to the nonmoving party, we decline, based on the facts of this case, to impose a duty of care on the defendant.[9]

## IV

## Conclusion

The order of the Superior Court denying the motion for summary judgment is quashed.  The papers in this case may be remanded to the Superior Court with our decision endorsed thereon.  We direct the Superior Court to enter judgment for the defendant.

---

[8] Indeed, Woodruff challenged defendant's findings and selected another psychiatrist from a list provided by the FAA.  That psychiatrist, Dr. Altman, conducted a thorough review and produced a 400-page report, also concluding that Woodruff exhibited chemical dependence.

[9] The defendant also contends that even if he were burdened with a duty, his comments would be protected by G.L. 1956 chapter 33 of title 9, the Anti-SLAPP statute.  Section 9-33-2(a) says, "A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counterclaims, or cross-claims."  Although we have grave reservations that the Anti-SLAPP statute would apply in a situation such as this, especially where the party claiming protection was compensated for his services, we need not reach the issue because we have concluded that Dr. Gitlow owed no duty of care to Woodruff in the first instance.



**TITLE OF CASE:**  Michael L. Woodruff v. Stuart Gitlow, M.D.

**CASE NO:**  No. 2012-67-M.P.
(NC 10-651)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  June 2, 2014

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty**,** Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Joseph R. Palumbo, Jr., Esq.

For Defendant:  Daniel E. Burgoyne, Esq.