**Supreme Court**

No. 2012-157-M.P.
(PC 04-3025)
(PC 04-3026)

Theodore J. Fabrizio, Jr.                      :

                    v.                          :

City of Providence, et al.                      :


      Stephen J. Deninno                        :

                    v.                          :

City of Providence, et al.                      :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Theodore J. Fabrizio, Jr.      :

v.      :

City of Providence, et al.      :


Stephen J. Deninno      :

v.      :

City of Providence, et al.      :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The petitioners, former Providence Mayor Vincent A. Cianci, Jr. and former Chief of the Providence Fire Department James Rattigan, seek review on certiorari of an order by the Superior Court denying without prejudice their motion for summary judgment.[1] The underlying dispute arose after the respondents, Theodore J. Fabrizio, Jr. and Stephen J. Deninno, two Providence firefighters, objected to orders from their superiors that they serve as part of the crew of a fire engine in the 2001 Pride Parade.[2] Following their unwilling

---

[1] Although both Vincent A. Cianci, Jr., and James F. Rattigan do not presently hold their former offices as Mayor and Fire Chief, for the sake of narrative clarity we shall hereinafter refer to them simply by the titles which they held at the time of the 2001 Pride Parade that gave rise to the instant jarndycean piece of litigation.

[2] The Rhode Island Pride Commission, the Pride Parade's sponsor, is a nonprofit organization the goal of which is "celebrating the pride and diversity of the lesbian, gay, bisexual, and transgendered community of Rhode Island and southern New England." About Us, RHODE ISLAND PRIDE, http://www.prideri.com/ (last visited December 19, 2014).

participation in the parade, the respondents sued the petitioners, as well as the City of Providence, on a variety of state and federal claims. Mayor Cianci and Chief Rattigan moved for summary judgment on two of those claims (<u>viz.</u>, Counts Six and Seven; see <u>infra</u>), invoking the venerable doctrine of qualified immunity from suit.[3] After entertaining argument in open court, the hearing justice opined that further development of the pertinent facts was warranted; accordingly, he denied the motion for summary judgment, but he specifically stated that the denial was without prejudice.

For the reasons set forth below, we quash the judgment of the Superior Court and remand with instructions that petitioners' motion for summary judgment be granted.

## I

### Facts and Travel[4]

In 2001, Mr. Fabrizio and Mr. Deninno were employed by the Providence Fire Department, Mr. Fabrizio as a firefighter and Mr. Deninno as a captain. Both men served in Engine Company No. 7, a company based at the North Main Street Fire Station. On June 15, 2001, Engine Company No. 7 received a work assignment to drive a fire truck in the 2001 Pride Parade the next day. Nothing in the record indicates that assignments of this type were at all uncommon.[5] It is further uncontested in the record that Engine Company No. 7 was the engine

---

[3]     Regrettably, the papers containing petitioners' motion for summary judgment and the accompanying memorandum of law are missing from the record before us. Nonetheless, we have been able to glean from the extant record the essence of their argument.

[4]     There is no material dispute with respect to the facts that we have summarized in the text.

[5]     Chief Rattigan testified in his deposition that fire engine companies had also received orders to participate in parades for other organizations; and the record indicates that the Fire Department used an official "Request for a Fire Company" form for the 2001 Pride Parade.

company chosen to carry out the 2001 Pride Parade assignment due to its proximity to the parade route, in accordance with the practice of Chief Rattigan.

Mr. Fabrizio and Mr. Deninno self-identify as members of the Roman Catholic Church, and they contend that their beliefs as Catholics do not allow them to "support, encourage, nor condone homosexual behavior." When these two firefighters learned of their company's assignment, they objected to participating in the parade on the basis of their religious beliefs, expressing their discomfort to the district chief. Notwithstanding the objections of Mr. Fabrizio and Mr. Deninno, Chief Rattigan reiterated his order that they carry out the task assigned. (Mr. Fabrizio and Mr. Deninno also alleged that they were told by others associated with the Fire Department that the order to participate in the parade came directly from Mayor Cianci.) The next day, Mr. Fabrizio and Mr. Deninno reluctantly were part of the crew of Engine Company No. 7 as it took part in the parade pursuant to the June 15, 2001 order. Both firefighters alleged that it was their conviction that to do otherwise would jeopardize their employment status within the Fire Department.

Mr. Fabrizio and Mr. Deninno further alleged that, while the parade was ongoing, they experienced sexual harassment, including being subjected to sexual propositions and other offensive remarks. Mr. Fabrizio and Mr. Deninno also claimed that the harassment did not end with the work assignment; they averred that, after their assignment to the parade, they suffered additional sexual harassment at the hands of their coworkers and also received at least sixty profanity-laced anonymous phone calls. Mr. Fabrizio and Mr. Deninno alleged that, despite participating in meetings with the City's Equal Employment Opportunity Officer, filing formal grievances with their union, and lodging complaints with "upper-level management," their complaints went unresolved.

In June of 2004, Mr. Fabrizio and Mr. Deninno filed nearly identical complaints in the Superior Court for Providence County against several defendants—Mayor Cianci, individually and in his official capacity; Chief Rattigan, individually and in his official capacity; and the City of Providence, by and through its treasurer, Stephen Napolitano. The only counts in their complaints that are relevant to this appeal are Count Six (alleging deprivation of the right of freedom of religion under the Rhode Island Constitution) and Count Seven (alleging deprivation of the rights of freedom of speech and association under the Rhode Island Constitution).[6] Mr. Fabrizio and Mr. Deninno sought several forms of relief, including declaratory and injunctive relief as well as compensatory and punitive damages.

In January of 2012, petitioners, Mayor Cianci and Chief Rattigan, moved for summary judgment on Counts Six and Seven on the basis of qualified immunity.[7] The two officials argued that respondents had no clearly established right to "refuse to complete a legitimate work

---

[6]    All other counts in the complaint were disposed of in favor of Mayor Cianci and Chief Rattigan during earlier stages of the litigation for reasons that are not presently relevant. The original nine counts were as follows: (1) Count One, alleging employment discrimination in violation of the federal Civil Rights Act; (2) Count Two, alleging unlawful discrimination in violation of the state Fair Employment Practices Act; (3) Count Three, alleging unlawful discrimination in violation of the state Civil Rights Act; (4) Count Four, alleging a deprivation of the right to freedom of religion under federal law; (5) Count Five, alleging a deprivation of the right to freedom of speech and association under federal law; (6) Count Six, alleging deprivation of the right of freedom of religion in violation of the Rhode Island Constitution; (7) Count Seven, alleging deprivation of the right of freedom of speech and association in violation of the Rhode Island Constitution; (8) Count Eight, alleging intentional infliction of emotional distress; and (9) Count Nine, alleging negligent infliction of emotional distress.

[7]    Through its ten long years of travel, this case has been removed to federal court, has been remanded by that court, and has survived several dispositive motions in state court—including a partial motion for summary judgment by respondents, a motion for summary judgment on the merits by petitioners, and a motion to dismiss by petitioners. Somewhere along the way, the parties managed to undertake a great deal of discovery; among those whose depositions were taken were Mr. Fabrizio, Mr. Deninno, and Chief Rattigan.

assignment"—i.e., to refuse to man a fire truck in a parade because of personal moral objections to the task. The respondents vociferously disagreed, arguing in their objection to the motion for summary judgment (1) that qualified immunity was no bar to any injunctive or declaratory relief in their favor; and (2) that, more importantly, in view of what they contended was the applicable test for constitutional violations of the rights of government employees, petitioners could not show that they were qualifiedly immune from suit. After considering the arguments of the respective parties, the hearing justice rendered a bench decision denying the motion. While the hearing justice noted that this Court had alluded to the possible applicability of the doctrine of qualified immunity in earlier cases such as Ensey v. Culhane, 727 A.2d 687 (R.I. 1999) and Pontbriand v. Sundlun, 699 A.2d 856 (R.I. 1997), he did not pass upon the applicability of that doctrine in this case; it was his view that the facts had not yet been sufficiently developed for him to be able to grant petitioners' motion for summary judgment. Accordingly, the hearing justice denied the motion—albeit without prejudice. Mayor Cianci and Chief Rattigan subsequently filed a petition for review on writ of certiorari. We granted the petition and stayed further Superior Court proceedings pending our review of the matter.

## II

### Standard of Review

As a general rule, this Court will not review the denial of a motion for summary judgment, since such an order constitutes an interlocutory decision; and, under our precedent, the non-prevailing party is not entitled to an appeal of right. National Refrigeration, Inc. v. Capital Properties, Inc., 88 A.3d 1150, 1154 (R.I. 2014). However, even though a direct appeal is not available, a non-prevailing party may petition for certiorari with respect to an otherwise nonappealable order. See Fayle v. Traudt, 813 A.2d 58, 61 (R.I. 2003). On occasion, we have

granted a writ of certiorari following a denial of a motion for summary judgment where no genuine issues of material fact are in dispute, and both parties present purely legal arguments. See, e.g., Henderson v. Nationwide Insurance Co., 35 A.3d 902, 905 (R.I. 2012). Our review on certiorari is confined to determining whether an error of law has occurred. Woodruff v. Gitlow, 91 A.3d 805, 809 (R.I. 2014).

We review the denial of a motion for summary judgment de novo, and we use "the same standard of review that applies to a grant of summary judgment." Woodruff, 91 A.3d at 809 (internal quotation marks omitted); see also National Refrigeration, Inc., 88 A.3d at 1154; Employers Mutual Casualty Co. v. Arbella Protection Insurance Co., 24 A.3d 544, 553 (R.I. 2011). This standard requires us to view the record in the light most favorable to the nonmoving party; and, if we conclude that a genuine issue of material fact exists or that the moving party is not entitled to judgment as a matter of law, we must affirm the denial of summary judgment. See Woodruff, 91 A.3d at 810; see also Morales v. Town of Johnston, 895 A.2d 721, 726-27 (R.I. 2006). See generally Estate of Giuliano v. Giuliano, 949 A.2d 386, 390-91 (R.I. 2008).

## III

## Analysis

Although petitioners argue that the doctrine of qualified immunity protects them from liability, we have stated that "[g]overnment officials need not avail themselves of the protections of qualified immunity when no constitutional violation is present." Monahan v. Girouard, 911 A.2d 666, 673-74 (R.I. 2006). Accordingly, we conclude that, in view of the facts of this specific case, it is not necessary to invoke the doctrine of qualified immunity because no constitutional violation occurred.

Here, respondents received an order to participate in the parade because their engine company was assigned to the task; it is uncontested that such orders were common, as evidenced by Chief Rattigan's reference to receiving "numerous" requests from parade organizers for Fire Department participation and as reflected in the standard form for such requests used by the Department. After receiving this work assignment from their employer (the regularity of which has not been questioned), respondents participated in the parade merely as relatively anonymous public servants. We are unaware of any pertinent legal authority in support of the proposition that, in such specific circumstances, employees' rights are violated if they happen to possess religious objections to the beliefs of the group with which an otherwise legitimate work assignment requires brief interaction. See generally Mendoza Toro v. Gil, 110 F. Supp. 2d 28, 35 (D.P.R. 2000) (stating that the plaintiff's beliefs "[did] not relieve her of her professional obligation to complete legitimate work assignments" and further stating that the plaintiff did not "have a First Amendment right to pick and choose work assignments that suit[ed] her moral beliefs").

The respondents' appearance in the parade, solely as members of the Providence Fire Department, did not constitute a form of expression on their part. Rather, it was simply the accomplishing of a task assigned to an engine company of the Providence Fire Department, and the individuals chosen to carry out that assignment cannot be said to have engaged in personal speech by carrying out their work as public servants. See generally Hennessy v. City of Melrose, 194 F.3d 237, 245, 246 (1st Cir. 1999) (noting that plaintiffs who allege that they have been discharged for exercising First Amendment rights must show they have engaged in constitutionally protected speech—that is, "commenting upon matters of public concern") (internal quotation marks omitted).

As we noted in <u>Monahan</u>, "the first step in evaluating a claim to qualified immunity is to determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." <u>Monahan</u>, 911 A.2d at 674 (internal quotation marks omitted). The respondents' participation in the parade as public servants carrying out a legitimate work assignment was not a deprivation of their constitutional rights. Therefore, as in <u>Monahan</u>, since there was no deprivation of a constitutional right, our analysis rightly can come to an abrupt halt since "the need for [invocation of the doctrine of qualified immunity] no longer exists." <u>Id.</u>

## IV

## Conclusion

For the reasons set forth herein, the petition for certiorari is granted, and the judgment of the Superior Court is quashed. The papers in the case are remanded to the Superior Court with our opinion endorsed thereon for entry of judgment on Counts Six and Seven in accordance with this opinion.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Theodore J. Fabrizio, Jr. v. City of Providence, et al.
Stephen J. Deninno v. City of Providence, et al.

**CASE NO:** No. 2012-157-M.P.
(PC 04-3025)
(PC 04-3026)

**COURT:** Supreme Court

**DATE OPINION FILED:** December 19, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice William P. Robinson III

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

For Petitioners: Kevin F. McHugh, Esq.

For Respondents: Gina A. DiCenso, Esq.